**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**DOCKET NO. 3:05MC334-C**

| | |
|---|---|
| **SECURITY INSURANCE COMPANY OF HARTFORD, on behalf of itself and as the successor to THE FIRE & CASUALTY INSURANCE COMPANY OF CONNECTICUT and THE CONNECTICUT INDEMNITY COMPANY,** )<br>)<br>)<br>)<br>)<br>)<br>) | |
| **Plaintiff,** )<br>) | **MEMORANDUM AND ORDER** |
| **v.** )<br>) | |
| **EUGENE DENNIS,** )<br>) | |
| **Defendant.** )<br>_____) | |

**THIS MATTER** is before the Court on the "Plaintiff's Petition and Motion to Compel Arbitration" (document #1) and "Memorandum ... in Support ..." (document #2), both filed November 7, 2005; and the Defendant's "Response in Opposition ..." (document #5) and "Memorandum in Support of Response ..." (document #4), both filed November 23, 2005. On December 12, 2005, the Plaintiff filed its "Reply ..." (document #7).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>hold in abeyance</u> the Plaintiff's Motion to Compel Arbitration while the parties conduct limited discovery, as discussed below.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Security Insurance Company of Hartford, is a Connecticut insurance company, while the Defendant, Eugene Dennis, is a North Carolina citizen and the sole shareholder and President of Dennis Insurance Group, Inc., ("DIG"), a North Carolina corporation operating as an insurance agency.

On July 1, 1999, the Plaintiff, along with its predecessors in interest, The Fire & Casualty Insurance Company of Connecticut and The Connecticut Indemnity Company, entered into a Program Administrator Agreement ("PAA") with DIG, whereby DIG was appointed those companies' general agent to: (1) solicit applications for new and renewal workers compensation insurance in certain approved territories; (2) underwrite, bind and issue policies in accordance with Plaintiff's Underwriting Guidelines; (3) make customary changes and modifications of existing policies; and (4) charge and collect premiums for such policies. DIG was required, among other things, to remit premiums to Plaintiff for all policies sold. The Defendant signed the PAA on DIG's behalf as its President, but did not sign it separately in his individual capacity.

> It is undisputed that the PAA contained a valid arbitration clause which states:
>
> Any controversy or claim of either of the parties arising out of or relating to this Agreement, or the breach of any term, condition, or obligation, which is not resolved by non-binding mediation, shall be settled by final and binding arbitration before three (3) arbitrators chosen under and governed by the Commercial Arbitration Rules of the American Arbitration Association to be held in the State of Connecticut, and judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction.

See PAA at 15, Exhibit 1 to "Plaintiff's Petition and Motion to Compel Arbitration" (document

#1).[1]

The Plaintiff alleges that at all times, the Defendant held himself out to have absolute authority over all decisions and actions taken by DIG, and that he was directly involved in the daily operations of DIG and in the administration of the PAA.

For the purposes of this motion, the Defendant does not dispute that over the course of the parties' relationship, the Plaintiff performed several audits and discovered that DIG failed to remit premiums that were due for policies sold to the Defendant's clients, did not provide monthly updates, and failed to obtain and provide necessary underwriting information. The Plaintiff further alleges that the Defendant promised to personally rectify those breaches, but that, nevertheless, they continued.

On June 21, 2001, the Plaintiff terminated the PAA, and alleges that at that time, DIG owed $2,172,368.55 in premiums. The Plaintiff alleges, and the Defendant does not dispute, that DIG is now insolvent.

On July 29, 2005, the Plaintiff filed an Arbitration Demand under the terms of the PAA against both DIG and the Defendant in his individual capacity, seeking to recover the unpaid premiums.[2]

On September 29, 2005, the Defendant's counsel informed the Plaintiff that the Defendant would not participate in the arbitration proceeding in his individual capacity.

---

[1] As discussed below, the Defendant concedes both that the arbitration clause is generally valid and that the subject dispute, that is, nonpayment of insurance premiums, is within the scope of the arbitration clause, but contends that having signed the PAA only as President of DIG, he may not be compelled to arbitrate in his individual capacity. See Defendant's "Memorandum in Support of Response ..." at 2 (document #4).

[2] The Plaintiff also named Dennis & Associates, Inc. ("D&A"), another corporation owned and controlled by the Defendant, in the Arbitration Demand for its alleged failure to service claims on policies as it was required to do under the terms of a separate contract.

3

On November 7, 2005, the Plaintiff filed its "Petition and Motion to Compel Arbitration" (document #1), that is, to compel the Defendant to arbitrate the Plaintiff's claims against DIG, but now concedes that limited discovery is necessary prior to determining whether the Defendant may properly be compelled to arbitrate. See Plaintiff's "Reply ..." at 10-11 (document #7).[3]

## II. DISCUSSION

The Federal Arbitration Act ("FAA") establishes a federal policy favoring the enforcement of written agreements to arbitrate. Specifically, the FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999). The FAA requires courts to compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. See 9 U.S.C. § 3 (1999).

As the Plaintiff correctly notes, the Supreme Court has instructed that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991), quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "Pursuant to that liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25. See also Choice Hotels

---

[3]The Plaintiff alleges that discovery will reveal that DIG is the Defendant's "alter ego" and that:
(a) [Defendant] failed to maintain DIG as a company separate and apart from the other companies he operated at the same address; (b) ... disregarded corporation formalities and failed to maintain an arms-length relationship between his various companies; (c) ... failed to maintain adequate corporate records for his various related entities; (d) ... undercapitalized DIG; (e) ... fraudulently misused corporate assets for his own personal profit; (f) ... diverted funds belonging to Plaintiff for unintended uses; and/or (g) ... commingled funds with funds belonging to Plaintiff.
Plaintiff's "Reply ..." at 10 (document #7).

4

Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001); Long v. Silver, 248 F.3d 309, 315-16 (4th Cir. 2001); and O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997).

The district courts' decisions determining the scope of arbitration agreements are generally reviewed de novo because such determinations are typically matters of contract interpretation. Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 395 (4th Cir. 2005); and United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001). However, in cases such as the present one, where the parties agree that the underlying dispute is within the scope of the arbitration provision in the PAA and the only question is whether the Defendant, who did not personally sign the PAA, may nevertheless be compelled to arbitrate, the Fourth Circuit Court of Appeals reviews the district court's decision for an abuse of discretion. Accord Brantley, 424 F.3d at 395; Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 528 (5th Cir. 2000); and International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417-18 (4th Cir. 2000).

Concerning whether an otherwise valid and applicable arbitration clause may be enforced against a nonsignatory to the contract containing the arbitration provision, it is well settled that "the obligation and entitlement to arbitrate does not attach only to one who has personally signed the written arbitration provision." Washington Square Securities, Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004), citing Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d at 416. Rather, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." Washington Square Securities, Inc., 385 F.3d at 435 (emphasis added). Accord Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d at 417, citing with approval Thomson-CSF v. Am. Arbitration Ass'n, 64

F.3d 773, 776 (2d Cir. 1995) (recognizing five theories for binding nonsignatories to arbitration agreements: "incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel") (emphasis added); and Davidson v. Becker, 256 F.Supp.2d 377, 383 (D.Md. 2003) ("[t]he Fourth Circuit has cited with approval to a Second Circuit case that enumerated five specific instances where non-signatories could claim the protection of an arbitration agreement").

Although there is no published Fourth Circuit authority compelling a nonsignatory to arbitrate under an alter ego theory, in Schwabedissen Maschinen & Anlagen GMBH, the Fourth Circuit went on to state that:

> state law determines questions concerning the validity, revocability, or enforceability of contracts generally, but the Federal Arbitration Act ... create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. Because the determination of whether [the] nonsignatory is bound by the [general] contract presents no state law question of contract formation or validity, we look to the federal substantive law of arbitrability to resolve this question.

206 F.3d at 417 (internal citations omitted and emphasis added).[4]

In Davidson, the district court concluded that because the Fourth Circuit favorably cited the five Thomson-CSF factors in Schwabedissen Maschinen & Anlagen GMBH, supra, and had instructed the courts to apply the "federal substantive law of arbitrability," a nonsignatory could compel a signatory or be compelled itself to arbitrate under any of those theories. 256 F.Supp.2d at 384 ("[the Fourth Circuit] references to the Thomson-CSF case leads this Court to conclude that it too would find that an agent can seek the protection of a principal's arbitration agreement and use

---

[4] Although recognizing that unpublished decisions have no precedential value, the undersigned notes that the Fourth Circuit has upheld an order confirming an arbitration award against a nonsignatory after concluding that the nonsignatory was the alter ego of a party to the contract containing the arbitration provision. Chafin Coal Company v. United Mine Workers of America, 846 F.2d 69 (table) (4th Cir. 1988).

6

it to compel arbitration").

For the same reasons, if following discovery, as ordered below, the Defendant is found to be the alter ego of DIG, that is, of a party to the PAA, he will be compelled to arbitrate. Accord Washington Square Securities, Inc., 385 F.3d at 435; Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d at 417; and Davidson v. Becker, 256 F.Supp.2d at 383.[5]

Moreover, as the Defendant acknowledges in his brief, the Fourth Circuit has expressly applied another of the Thompson-CSF theories, equitable estoppel, and repeatedly held that where a nonsignatory asserted any right or had received a "direct benefit" under the contract containing the arbitration provision, he was estopped from avoiding arbitration. Accord R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 160-61 (4th Cir. 2004) ("In the context of arbitration, the doctrine [of equitable estoppel] applies when one party attempts to hold another party to the terms of an agreement while simultaneously trying to avoid the agreement's arbitration clause"); Long v. Silver, 248 F.3d 309, 320 (4th Cir. 2001) (nonsignatory shareholder could not claim benefit of agreement between other shareholders without submitting to arbitration required by the same agreement); United States v. Bankers Ins. Co., 245 F.3d 315, 323 (4th Cir. 2001) (nonsignatory could not seek direct benefit from contract while "simultaneously attempting to avoid the terms of an arbitration provision contained therein"); and Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 ("nonsignatory is estopped from refusing to comply with an arbitration

---

[5] Courts consider three factors when weighing whether a party is the alter ego of a corporation: (1) whether the defendant had complete control and domination over finances, policy, and business practice so that "the corporate entity as to th[e disputed] transaction had at the time no separate mind, will or existence of its own"; (2) whether the defendant committed a fraud or wrong, "or a dishonest and unjust act in contravention of plaintiff's legal rights" with this control; and (3) whether the "control and breach of duty … proximately cause[d] the injury or unjust loss complained of." Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985), citing B-W Acceptance Corp. v. Spencer, 149 S.E.2d 570, 576 (N.C. 1966).

clause when it is seeking or receives a direct benefit from a contract containing an arbitration clause").

Because the Defendant denies and the Plaintiff has not addressed whether the Defendant has asserted any right or received a direct benefit under the PAA, limited discovery is also necessary prior to determining whether the Defendant may be compelled to arbitrate under a theory of equitable estoppel.

### III. ORDER

**NOW THEREFORE, IT IS ORDERED**:

1. The "Plaintiff's Petition and Motion to Compel Arbitration" (document #1) is **HELD IN ABEYANCE** and the parties are granted leave to conduct discovery limited to the issues of alter ego and equitable estoppel, discussed above, with said discovery to be completed no later than April 30, 2006.

2. Upon the conclusion of discovery, the Plaintiff shall have until May 31, 2006 to file a supplemental brief in support of its Petition and Motion to Compel Arbitration.

3. The Defendant shall have fourteen (14) days from receipt of the Plaintiff's supplemental brief, plus three days for mailing, to file his supplemental brief in opposition.

4. The Plaintiff shall have seven (7) days from receipt of the Defendant's supplemental brief in opposition, if any, plus three days for mailing, to file a supplemental reply brief.

5. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED**.

**Signed: December 20, 2005**

*[Signature: Carl Horn, III]*

Carl Horn, III
United States Magistrate Judge